# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 03-916


**ALLEAN CURTIS**

**VERSUS**

**COLUMBIA DOCTORS' HOSPITAL OF OPELOUSAS, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 99-C-3972-A
HONORABLE JAMES T. GENOVESE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Saunders, J., dissents and assigns written reasons.**

**William Winfield Stagg**
**Daniel C. Palmintier**
**Durio, McGoffin & Stagg**
**Post Office Box 51308**
**Lafayette, LA 70505**
**(337) 233-0300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    Doctors Hospital of Opelousas

**Guy O. Mitchell, III**
**225 Court Street**
**Ville Platte, LA 70586-4492**
**(337) 363-0400**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    Allean Curtis

AMY, Judge.

The plaintiff filed suit against the defendant hospital alleging that she fell from a bed at the facility following total knee replacement surgery. She sought damages associated with the complications and surgeries subsequent to the fall. Following a bench trial, the trial court concluded that the plaintiff failed to prove that the fall resulted from negligent care by the hospital. The plaintiff appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

The plaintiff, Allean Curtis, was a patient in the rehabilitation unit of Columbia Doctors' Hospital of Opelousas on July 10, 1997. She had been admitted to the rehabilitation unit following a total knee replacement performed at the hospital on June 30, 1997. The instant matter arose due to a fall Ms. Curtis suffered on the morning of July 10.

The plaintiff alleges that the bed rails along the side of the bed were not in their upright position and that the fall resulted when she tried to roll over in bed. She contends that the hospital staff was required to keep the rails in their upright position as she was at a high risk for falling. She alleges that this risk resulted from the type of surgery from which she was recovering, her mental health history, and the type of medications she required. She contends that these factors indicated that she should have been closely monitored/supervised under the hospital's Fall Alert Program and that the failure to more closely follow the requirements of the program caused her injuries.

As a result of the fall, the plaintiff required an immediate corrective surgery. Her course subsequent to this second surgery was difficult, with history of an infection and additional hospitalization and procedures. Suit was filed against Doctors'

Hospital and the physician who performed the initial total knee replacement. The physician was ultimately dismissed from the suit. The defendant hospital refuted the allegation that the bed rails were not in their upright position.

In reasons for ruling, the trial court concluded that the plaintiff failed to meet her burden of proving that the fall resulted from negligence of the hospital or hospital staff. In particular, the trial court concluded that the evidence did not support the plaintiff's allegation of having fallen from the bed. Rather, the trial court concluded, the evidence indicated that the plaintiff attempted to travel to the bathroom unaccompanied and fell while trying to do so.

The plaintiff appeals, assigning the following as error:

> The Court committed legal error or manifest error that plaintiff did not prove it's case by a preponderance of the evidence in spite of overwhelming evidence in plaintiff's favor.

The plaintiff asks that, in the event the trial court's determination is reversed on appeal, damages be awarded.

**Discussion**

The plaintiff contends that the evidence presented indicated that the side rails were required to be in their upright position and that they were not in place at the time of the fall. In her brief to this court, the plaintiff states that: "It is almost impossible for the accident to have happened any other way than the plaintiff described, supporting plaintiff's argument that the Court committed legal error." She later states that: "Even if she somehow got <u>out</u> of bed, rather than rolled out, the probability is great that the hospital did not follow the mandate of the fall alert; i.e., side rails up at all times, directly and negligently leading to the accident." The plaintiff argues alternatively that the trial court's finding that she failed to prove her case by a

2

preponderance of the evidence is legal or manifest error. The plaintiff asks this court to reverse the trial court's determination and award damages.

La.R.S. 9:2794(A)[1] sets forth the burden of proof for medical malpractice claims, requiring that a plaintiff establish the applicable standard of care, breach of the standard, and a causal link between the breach and the injuries suffered. With regard to the burden of proof applicable to a patient's stay in a hospital, the Louisiana Supreme Court has observed that the occurrence of an injury or accident, alone, does not raise a presumption of negligence on the part of the hospital. *See Galloway v. Baton Rouge Gen. Hosp.*, 602 So.2d 1003 (La.1992). With regard to the hospital's duty, the supreme court further stated:

> However, "[i]t is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control". *Hunt v. Bogalusa Community Medical Center* 303 So.2d 745, 747 (La.1974). Moreover, determining whether the hospital has "breached the duty of care it owes to a particular patient depends upon the circumstances and facts of that case". Id.

*Id.* at 1008.

---

[1]  A.  In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., an optometrist licensed under R.S. 37:1041 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:

(1)  The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.

(2)  That the defendant either lacked his degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3)  That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

The trial court rendered extensive written reasons, referencing the plaintiff's testimony that she fell from the bed while attempting to turn over in bed. However, the trial court further referenced the notes of the nursing staff and involved physicians who indicated that the plaintiff fell while attempting to go to the bathroom unassisted. The trial court observed that the nurse on duty the morning of the fall testified that he found the plaintiff near the door, a distance explained to be approximately six or seven feet from the bed. The trial court also noted that "the last two (2) nurses' notes (at 2200 and 2300 on 7/9/97) before the fall indicated the bed side rails as being up (SR8)." Furthermore, the trial court discounted the testimony of the plaintiff's expert witness, an emergency room physician critical of the defendant hospital's implementation of its Fall Alert Program. The trial court found the testimony of little value due to the physician's practice in the field of emergency medicine and lack of experience "in the field of rehabilitation or nursing programs (such as a Fall Alert Program)." The trial court explained that it was "doubtful that [the expert witness] could or would meet the Daubert/Foret test relative to rehabilitative nursing care." In its conclusion, the trial court stated:

> Unquestionably, Ms. Curtis suffered a serious fall and was seriously injured as a result thereby. This court is quite sympathetic toward her in that regard, but the law is the law, and it applies equally to all. The law requires that the plaintiff must prove a breach of the applicable standard of care by a preponderance of the evidence. This, the plaintiff has not done. Plaintiff has proven her fall with serious injury. Plaintiff has not proven a breach of the applicable standard of care and that said substandard care caused an injury to her which would not have otherwise occurred. The evidence preponderates toward plaintiff falling while improvidently attempting to go to the bathroom without seeking assistance. The evidence does not preponderate toward plaintiff "rolling out of bed" onto the floor. For six (6) days prior to her fall, plaintiff had been in the rehabilitative unit successfully voiding with the assistance of hospital personnel. She also had available to her a "call button" to summon assistance, and her room was right across from the nurses' station wherein she could have actually called out for assistance if she was not properly being attended to or cared for. Despite her

4

mental deficiency, for six (6) days prior to her fall, she appeared to adequately progress in her rehabilitation without incident. Unfortunately, and regrettably, she fell and seriously damaged her knee replacement requiring corrective surgery. Simply stated, plaintiff has not proved her case.

Although the plaintiff asserts that the trial court's conclusion was legal error given the state of the evidence in the record, the reasons indicate that the trial court ultimately found that the "breach" element of the burden of proof was not established. This question of whether a health care provider's conduct fell below the applicable standard of care is a factual determination and is thus subject to the manifest error standard of review. *See Martin v. East Jefferson Gen. Hosp.*, 582 So.2d 1272 (La.1991). We find no such error.

In short, the record supports the trial court's findings. Although the plaintiff testified that she rolled from the bed, the trial court did not accept this testimony. This type of credibility determination is appropriately left to the trier of fact and will not be disturbed on appeal absent manifest error. *See Elevating Boats, Inc. v. St. Bernard Parish*, 00-3518 (La. 9/5/01), 795 So.2d 1153. Instead of the plaintiff's version of events, the trial court relied on other evidence indicating that the bed rails were in place and that she attempted to go to the bathroom. The nurse's notes include a statement that Ms. Curtis reported that she fell while attempting to go to the bathroom unassisted. The trial court heard from the nurse on duty that morning, who explained that Ms. Curtis was found by the door. The nurse further testified that it was his practice to ensure that the bed rails are up when he checks on a patient during his hourly rounds. The nurse's notes from earlier in the evening contain an inscription referenced by the trial court that the rails were in their upright position. Finally, the medical personnel who testified at trial indicated that bed rails are used in a rehabilitation facility to both prevent situations in which patients fall from the bed as

5

well as to serve as a reminder to the patient to not move from the bed without assistance. However, the witnesses explained that patients can and do, in fact, get up from the bed with the side rails in place.

Our review of the record reveals support for the trial court's determination that the plaintiff failed to satisfy the necessary burden of proof with regard to a breach of the standard of care. Accordingly, we conclude that this assignment lacks merit. Due to our resolution of this assignment in favor of the appellee, we do not reach the plaintiff's request for the award of damages.

### DECREE

For the foregoing reasons, the decision of the trial court is affirmed. All costs of this appeal are assigned to the plaintiff, Allean Curtis.

**AFFIRMED.**

6

NUMBER 03-0916

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

ALLEAN CURTIS

VERSUS

COLUMBIA DOCTOR'S HOSPITAL OF OPELOUSAS, ET AL.

**SAUNDERS, J., dissenting.**

I must respectfully dissent, in part, from the majority opinion, specifically as to the trial court's decision to discount the testimony of the plaintiff's expert witness, Dr. Samuel Richardson, a physician specializing in Emergency Room medicine. The trial court explained that it was "doubtful that [the expert] could or would meet the *Daubert/Foret* test relative to rehabilitative nursing care." While the trial court questioned whether Dr. Richardson would meet the *Daubert* standard for admissibility of expert opinion evidence, the court did not find his testimony inadmissable, it merely chose to discount his testimony due to this perceived failure under the *Daubert/Foret* standard. I find this basis for discounting Dr. Richardson's testimony to be manifestly erroneous.

The *Daubert* standard, established for determining the admissibility of expert testimony, is intended to ensure that scientific testimony is both relevant and reliable. *State v. Foret*, 628 So.2d 1116 (La.1993). This requirement recognizes that the rules on expert testimony relax the standard requirement of first-hand knowledge on the part of the witness, which is deemed to be justifiable where the expert's opinion has "a reliable basis in the knowledge and experience of his discipline." *Id.* at 1122. I find

that the witness's extensive experience in hospital care would render him eminently qualified to state opinion evidence on the hospital's implementation of its Fall Alert Program. Moreover, absent the trial court specifically finding Dr. Richardson's testimony inadmissable under *Daubert*, it did not present sufficient grounds for discounting Dr. Richardson's testimony. When a trial court commits manifest error, the appeals court conducts a de novo review of the record and, where possible, should render a decision. I do not feel this procedure is appropriate for this case. Therefore, I would remand this matter to the trial court for a new trial with instructions that the testimony and opinions of Dr. Richardson should be given full weight.