771 So.2d 101 (2000)
PEOPLES STATE BANK
v.
HWY ONE CRAWFISH, INC., et al.
Peoples State Bank
v.
Hwy One Crawfish, Inc., et al.
Nos. 99-1393, 99-1394.
Court of Appeal of Louisiana, Third Circuit.
May 24, 2000.
Rehearing Denied September 13, 2000.
Writ Denied December 8, 2000.
*103 John Clifton Conine, Luster & Conine, Natchitoches, LA, Counsel for Plaintiff/Appellant-Peoples State Bank.
Edwin Dunahoe, Thomas, Dunahoe & Thomas, Natchitoches, LA, Counsel for Defendants/Appellees-Hwy. One Crawfish, Inc., John Masson, and Donna Martin Masson.
R. Raymond Arthur, Natchitoches, LA, Counsel for Defendants/Appellees-Hwy. One Crawfish, Inc., John Masson, and Donna Martin Masson.
(Court composed of JOHN D. SAUNDERS, JIMMIE C. PETERS, and GLENN B. GREMILLION, Judges).
PETERS, Judge.
These consolidated cases arise from attempts by Peoples State Bank, a Natchitoches Parish banking corporation, to collect on an indebtedness owed it by Clyde H. Masson and his wife, Carolyn Boydstun Masson. In addition to Clyde and Carolyn Masson, the two suits filed in the effort to collect the indebtedness also included as defendants, Hwy. One Crawfish, Inc., a Louisiana corporation; John A. Masson and his wife, Donna Martin Masson; and the unopened succession of Emma Richter Masson. The cases are currently before this court because Peoples State Bank has appealed a trial court's grant of a summary judgment dismissing the bank's claims against the corporation and John and Donna Masson (hereinafter sometimes referred to collectively as "the defendants"). For the following reasons, we affirm the trial court's judgment in all respects.

DISCUSSION OF THE RECORD
John and Clyde Masson are the sole shareholders and officers of Hwy. One Crawfish, Inc. In early 1989, they negotiated a loan to the corporation with First Bank of Natchitoches & Trust Company (First Bank). To secure the loan, on January 20, 1989, they executed a collateral chattel and collateral mortgage (hereinafter referred to as the "collateral mortgage") and collateral note in favor of First Bank in the amount of $500,000.00. On the same day, they executed a collateral pledge agreement with First Bank wherein they pledged the collateral note to secure the corporation's then existing debt.
The collateral mortgage described nine separate tracts of immovable property and certain movable property used in the corporation's business as being subject to its terms. However, it does not state whether the tracts are owned by the corporation, Clyde or John Masson, or a combination of the three. Clyde Masson executed the collateral mortgage, note, and pledge agreement individually and in his capacity as president of the corporation. John Masson also signed all three instruments, but only in his individual capacity. An extract of the minutes of a meeting of the board of directors of Hwy. One Crawfish, Inc., held January 11, 1989, is attached to the collateral mortgage. That extract states that, at the January 11 meeting, the board of directors authorized Clyde Masson to do the following acts on its behalf:
[T]o negotiate for, and enter into, any and all contracts and agreements of every nature and kind; to bind and obligate the corporation to execute contracts, documents, agreements and other instruments in writing, evidencing same; to buy and sell movable and immovable property, or real, personal and mixed property; to mortgage, hypothecate, pledge and otherwise encumber the property of the corporation; to lease its land for any and all purposes, including leases for mineral operations, development and production; to contract loans and make or acknowledge debts; to compromise or refer any matters to arbitration; to make transactions in matters *104 of litigation; to draw and endorse promissory notes; and, in general (but without limitation to the specific powers above mentioned), to exercise full, complete and plenary authority on behalf of the corporation; and all such acts or deeds performed by the said Clyde H. Masson are and shall be binding acts and deeds of Hwy. 1 Crawfish, Inc.
On March 15, 1994, Hwy. One Crawfish, Inc., and Clyde and John Masson again pledged the $500,000.00 collateral note to First Bank to secure the then corporate indebtedness to the bank of $157,495.94. Shortly thereafter, on May 24, 1994, the corporation's board of directors passed a resolution requiring the signature of two officers for certain corporate activities, including borrowing money or committing the corporate assets as security for any debt. A copy of the resolution was found in the bank records after issue was joined in this litigation and contains the following specific language relative to the required dual authority:
RESOLVED FURTHER, that any two of the following
John A. Masson
Clyde H. Masson
be and hereby are authorized to borrow money for and on behalf of and in the name of this corporation; to make any agreements in respect thereto; and to sign, execute and deliver promissory notes, acceptances or other evidences of indebtedness therefor, or in renewal thereof, in such amounts and for such time, at such rate of interest and upon such terms as they see fit; and are hereby authorized to endorse, assign, transfer, mortgage, or pledge to said Bank the bills receivable, warehouse receipts, bills of lading, stocks, bonds, real estate or other property not or hereafter owned by this corporation as security for the payment of any money so borrowed; to assign or negotiate to the Bank any bills receivable now or hereafter owned by this corporation, and to discount the same; to unconditionally guarantee payment of any or all bills receivable so negotiated or discounted, and to waive demand, protest and notice of non-payment.
RESOLVED FURTHER, that this resolution shall continue in force until express written notice of its rescission or modification has been furnished to and received by said Bank.
The resolution appears to be a standard form resolution provided by a banking institution and not prepared as an original by the corporation. It contains blank lines to be filled in with the appropriate information and has a notation across the bottom to the effect that it should be prepared in duplicate with the original copy being forwarded "to the Bank."
On March 29, 1996, Clyde and Carolyn Masson executed a promissory note in favor of First Bank in the principal amount of $163,813.61. The promissory note was made payable on April 5, 1997, and required regular quarterly interest payments beginning June 28, 1996. Clyde and Carolyn Masson secured this indebtedness with two commercial security agreements involving their own personal property and with a pledge of the January 20, 1989 $500,000.00 promissory note. Clyde Masson accomplished the pledge of the note with his signature alone. This litigation arises because the March 29 note was not paid in accordance with its terms.
Peoples State Bank acquired First Bank's assets by a merger agreement on June 30, 1997. Thereafter, on November 25, 1997, it filed the first of two suits for the collection of the balance owed the bank by Clyde and Carolyn Masson. The first suit had as its purpose the acquisition of a money judgment against Clyde and Carolyn Masson, a writ of sequestration as to the personal property used as security by the couple, and a recognition of the $500,000.00 collateral mortgage. The bank initially named as defendants Hwy. One Crawfish, Inc., Clyde and Carolyn Masson, and John Masson. On February 3, 1998, *105 the bank added Donna Martin Masson as a defendant.
Before Donna Masson was named as a party defendant, Hwy. One Crawfish, Inc. and John Masson answered the bank's suit, filed exceptions of no right and cause of action, and reconvened. In their pleadings, they claimed that Peoples State Bank violated its fiduciary duty to them, that Clyde Masson had no authority to pledge the $500,000.00 note to secure his personal debt, and that the attempted pledge by Clyde Masson was invalid as it did not contain the signature of two officers of the corporation as required by the May 24, 1994 corporate resolution.
The second suit by Peoples State Bank was an executory process suit filed on April 17, 1998. In this suit, Peoples State Bank added the unopened succession of Emma Richter Masson as a defendant in addition to those named as defendants in the prior action. The record contains no evidence of Emma Richter Masson's involvement in any of the financial transactions giving rise to the litigation or of issue having been joined as to the succession. Her only apparent connection to the litigation was as owner in indivision of some of the property secured by the January 20, 1989 collateral mortgage. In the executory process suit, the bank sought and obtained a writ of seizure and sale commanding the sheriff to seize and sell the property described in the January 20, 1989 collateral mortgage. Additionally, the bank combined the delinquent debt attributed to Clyde and Carolyn Masson with the balance on Hwy. One Crawfish, Inc.'s March 15, 1994 indebtedness, creating a total due debt of $314,963.35. However, the corporation's debt was not past due at the time the executory process action began.
After both sides filed numerous pleadings addressing the issues raised by the various pleadings, and, after the suits were consolidated, Peoples State Bank, on October 28, 1998, obtained a partial summary judgment against Clyde and Carolyn Masson. The judgment awarded the bank $207,339.04; recognized its security interest against their personal property; and recognized the existence of the act of collateral mortgage of January 20, 1989. However, it reserved for a future date the issues concerning the application of the collateral mortgage to Clyde and Carolyn Masson's debt. Clyde and Carolyn Masson did not appeal this judgment, and they are not before us in this appeal.
Peoples State Bank then filed a second motion for summary judgment against the defendants, John and Donna Masson and Hwy. One Crawfish, Inc. The defendants responded with a motion for summary judgment of their own which they filed on the day of trial on the bank's motion, December 3, 1998. After receiving the new motion and the affidavits attached to it, the trial court left the record open for ten days to allow the bank to respond. On December 15, 1998, the trial court rendered judgment in favor of the defendants, dismissing the bank's claims against them, rejecting the bank's motion for summary judgment, and reserving unto the defendants the right to pursue their claim for damages against the bank. The written judgment signed by the trial court on December 28, 1998, contained the following language:
The Court is of the opinion that the purported pledge dated March 29, 1996 was not a lawful pledge because it failed to have the signatures of two separate officers as required by the resolution dated May 24, 1994; and that accordingly, Peoples State Bank had no legal right to sue and seize the assets of defendants, John and Donna Masson and Highway One Crawfish, Inc....
The bank's motion for new trial was rejected by a judgment signed February 26, 1999, and the bank then perfected its appeal.
On appeal, Peoples State Bank alleges that the trial court erred in allowing the defendants to file late counter-affidavits to *106 the bank's motion for summary judgment; in not finding the defendants personally liable on the collateral mortgage note; in allowing the defendants to vary the terms of the collateral mortgage and note and the collateral pledge agreement through parol evidence and in violation of the Louisiana Credit Agreement Statutes, La.R.S. 6:1121, et seq.; and in dismissing the bank's claim even though the default provisions of the collateral mortgage were triggered by the default of Clyde Masson's loan. We find all of these assignments of error to be without merit.

OPINION
A motion for summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).
The movant bears the burden of proof. However, if he will not bear the burden of proof at trial, he must show simply an absence of factual support for one or more elements essential to the adverse party's claim. La.Code Civ.P. art. 966(C)(2). In this case, the defendants do not bear the burden of proof at trial. Thus, provided that the defendants make a prima facie showing that the motion should be granted, "if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." Id. In deciding whether summary judgment is warranted, we must consider that summary judgment is favored in the law as a manner "to secure the just, speedy, and inexpensive determination of every action" allowed by law. La.Code Civ.P. art. 966(A)(2).
On the day of the hearing on the motions for summary judgment, the defendants filed two counter-affidavits to the bank's motion for summary judgment. In its first assignment of error, Peoples State Bank alleges that the trial court erred by allowing these affidavits to be filed. In doing so, Peoples State Bank relies on the provisions of La.Code Civ.P. art. 966(B) which provides:
The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
(Emphasis added).
Additionally, the bank asserts that the affidavits contain inadmissible hearsay concerning the bank's intent in the subject transactions.
The affidavits at issue were filed as attachments to the defendant's December 3, 1998 summary judgment motion at the beginning of the scheduled hearing and were not served "prior to the date of the hearing." Id. However, in allowing them to be filed, the trial court granted Peoples State Bank additional time in which to file further pleadings. In doing so, the trial court made the following statement:
Gentlemen, we had previously, just for the record, several pre-trial conferences and what we talked about doing, so there would be no confusion. That the motions for summary judgment had previously been filed. Mr. Arthur is now filing one. We were going to take argument on these today and allow Mr. Conine to file any opposition or any memorandum that he wants to say, within the next ten days Mr. Conine. And then on December 15th the Court would issue a ruling at motion hour on this matter.
Pursuant to this extension, on December 14, 1998, Peoples State Bank filed a response to the defendants' motion for summary *107 judgment, a memorandum, and a counter-affidavit.
The mere fact that the defendants' counter-affidavits were filed untimely does not deem them inadmissible. In fact, it is entirely within the trial court's discretion to decide whether to admit such affidavits filed untimely in violation of La. Code Civ.P. art. 966(B). Only if there is evidence that the opposing party will be prejudiced by the late introduction of the affidavits is it reversible error for a trial court to allow the affidavits to be filed. White v. Gulf States Utilities, 465 So.2d 287 (La.App. 3 Cir.), writ denied, 468 So.2d 576 (La.1985). Peoples State Bank does not allege that it has been prejudiced by the late filings. Thus, we find no abuse of the trial court's discretion in allowing the late affidavits to be filed. This assignment of error is without merit.
We decline to address Peoples State Bank's assertion that the subject affidavits contained inadmissible hearsay, since the bank failed to first address the issue at the trial court level and now raises the issue for the first time on appeal. See Uniform RulesCourts of Appeal, Rule 1-3.
We next consider Peoples State Bank's assignments of error concerning the effect of the May 24, 1994 corporate resolution requiring that both Clyde and John Masson execute any documents that might incur debts in the corporation's name or encumber corporate assets as security. Peoples State Bank first argues that the May 24, 1994 corporate resolution is inadmissible parol evidence offered to vary the terms of the collateral mortgage agreement. We reject this argument.
The use of testimonial evidence to vary the terms of an authentic act is governed by the provisions of La.Civ.Code art. 1848 which reads as follows:
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.
We find the parol evidence rule inapplicable to the case at issue, since the May 24, 1994 corporate resolution in no way altered the contents of the collateral mortgage agreement.
Hwy. One Crawfish, Inc.'s decision as to who would act as its mandatary in borrowing money and pledging property was never part of the collateral mortgage agreement. Initially, a January 11, 1989 corporate resolution gave Clyde Masson authority to act alone in borrowing money and mortgaging corporate assets in the name of the corporation. While it was attached to the collateral mortgage, its purpose was to show the authority by which Clyde Masson executed the instrument at that time and was never incorporated as a term of the agreement. While the corporation retained the authority to use the collateral mortgage for future security under its terms, it also retained the authority to internally determine who could act on behalf of the corporation in the future, and any change in that respect would not alter the terms of the original collateral mortgage as argued by Peoples State Bank. The May 24, 1994 corporate resolution repealed Clyde Masson's authority to act independently for the corporation in borrowing money or pledging corporate property. A designation of which mandatary of the corporate mortgagor may act under the collateral mortgage agreement cannot be considered a term of the agreement, but rather, an independent decision made by the corporation, which may be changed by the corporation at any time. See La.Civ.Code art. 3025. A corporation's ability to alter who is authorized to incur debts on its behalf is at times necessary to protect a corporation's financial position, as was the case in this matter due to Clyde Masson's mismanagement of corporate funds.
*108 We note, however, that in order for the change in mandate to be effective as to a third party such as the bank, the principal must give notice to the third party.
The principal must notify third persons with whom the mandatary was authorized to contract of the revocation of the mandate or of the mandatary's authority. If the principal fails to do so, he is bound to perform the obligations that the mandatary has undertaken.
La.Civ.Code art. 3028.
It is clear from the record that Peoples State Bank had at least constructive, if not actual, notice of the existence of the May 24, 1994 resolution. Although the parties disagree as to who provided the form evidencing the corporate resolution, we note that the agreement is a standardized form with the corporation's information handwritten onto the form in the appropriate blanks and notations to "[f]orward the original copy to the Bank" and "complete all other forms furnished by the Bank...." Furthermore, the resolution itself was discovered in the bank's records during the course of the litigation. Thus, we find that Hwy. One Crawfish, Inc., properly notified Peoples State Bank of its revocation of Clyde Masson's authority to act independently in its name. Consequently, the defendants cannot be bound to perform any obligations incurred by Clyde and Carolyn Masson without the accompanying signature of John Masson as required under the change in mandate contained in the May 24, 1994 corporate resolution.
Peoples State Bank additionally asserts that the use of the May 24, 1994 corporate resolution to vary the terms of the collateral mortgage agreement violated the Louisiana Credit Agreement Statutes, particularly La.R.S. 6:1122 which states, "A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." The bank argues that the statute prevents the corporate resolution from being given effect, since it alters the terms of the collateral mortgage agreement without a signature of a bank representative. We disagree. The Louisiana Supreme Court has interpreted La.R.S. 6:1122 and its federal counterparts as follows:
These statutes were enacted primarily to limit the most frequent lender liability claims-those which involve assertions of breach of oral agreements to lend, to refinance or to forebear from enforcing contractual remedies-by requiring a writing as a prerequisite for a debtor to sue a lender and thus precluding debtors from bringing claims based on oral agreements.... The goal was to "prevent bank customers from bringing baseless lender liability claims against banks alleging breaches of undocumented side agreements between the customer and one or more bank officers."
Whitney National Bank v. Rockwell, 94-3049, p. 7 (La.10/16/95); 661 So.2d 1325, 1329-30 (citations omitted).
Thus, La.R.S. 6:1122 was intended to prevent bank customers from asserting a cause of action for damages against a bank based on oral credit agreements not signed in writing by the bank. La.R.S. 6:1121(1) defines "Credit agreement" as "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation."
In the instant case, the defendants are not alleging that the bank is liable under any oral credit agreement pertaining to promises to lend, refinance, or forebear from enforcing a loan. Rather, they seek to enforce, as a defense, a written change in mandate concerning who it authorizes to borrow money. Based on the clear wording of both La.R.S. 6:1121 and La.R.S. 6:1122, as well as interpreting jurisprudence, we find that La.R.S. 6:1122 is inapplicable to the present case. Accordingly, we find no merit in either of Peoples State *109 Bank's assignments of error as to the trial court's consideration of the May 24, 1994 corporate resolution.
Peoples State Bank also argues that the trial court erred in not finding the defendants personally liable under the collateral mortgage note. Under the terms of the collateral mortgage, the defendants are liable for all promissory notes pledged to the January 20, 1989, $500,000.00 collateral mortgage note. However, as we have already concluded, the bank did not have authority to pledge the March 29, 1996 promissory note signed by only Clyde and Carolyn Masson to the subject collateral mortgage note. Thus, the pledge of that note to the collateral mortgage note was without effect, and the defendants are free from any liability as to Clyde and Carolyn Masson's personal debt.
Lastly, Peoples State Bank alleges that the trial court erred in dismissing its suit against the defendants, considering that Clyde and Carolyn Masson's loan default triggered the default provisions of the collateral mortgage. We disagree. Again, because the March 3, 1996 promissory note evidencing Clyde and Carolyn Masson's debt was never properly pledged to the January 20, 1989 collateral mortgage note, the collateral mortgage was not put in default by Clyde and Carolyn Masson's default on their loan. Moreover, the only promissory note ever properly pledged to the collateral mortgage note, involving the $157,495.94 loan issued to Hwy. One Crawfish, Inc., on March 15, 1994, was never in default. Thus, we find no merit in this assignment of error.

DISPOSITION
We affirm the trial court's grant of summary judgment in favor of Hwy. One Crawfish, Inc., and John and Donna Masson in all respects. Costs of appeal are assessed against Peoples State Bank.
AFFIRMED.