# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


**04-0018**


**BILLY BROUSSARD, ET AL.**

**VERSUS**

**JOHN S. JESTER, M.D.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 77611
HONORABLE JULES DAVID EDWARDS III, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


**ELIZABETH A. PICKETT**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.


**REVERSED AND REMANDED.**


**James M. Garner**
**Debra J. Fischman**
**Elizabeth S. Robbins**
**Sher Garner Cahill Richter**
**Klein McAlister & Hilbert, LLC**
**909 Poydras Street, Suite 2800**
**New Orleans, LA 70112**
**(504) 299-2100**
**Counsel for Defendant/Appellee:**
        **John S. Jester, M.D.**


**John L. Hammons**

**Cornell R. Flournoy**
**Nelson & Hammons**
**705 Milam Street**
**Shreveport, LA  71101**
**(318) 227-2401**
**Counsel for Plaintiff/Appellant:**
**Billy Broussard**
**Paul Danny Broussard**

**PICKETT, Judge.**

## FACTS

On or about July 2, 1999, Shirley Broussard was diagnosed with Stage I cervical cancer by the medical staff at the University Medical Center in Lafayette, Louisiana. On July 12, 1999, Ms. Broussard began radiation and chemotherapy treatments with Dr. Gabor Altdorfer, an oncologist at the Romagosa Radiation Oncology Center. After undergoing several doses of radiation plus chemotherapy, Ms. Broussard contacted Dr. Altdorfer's staff to advise them that she had decided to discontinue radiation treatment and treat with essiac tea instead. Upon learning of her decision to discontinue the radiation therapy, Dr. Altdorfer contacted Ms. Broussard by phone on July 19, 1999. During their telephone conversation, Dr. Altdorfer warned Ms. Broussard that she needed to continue receiving the radiation treatments and the consequences of discontinuing the treatment. When his attempt to persuade Ms. Broussard to continue radiation treatment was unsuccessful, he sent her a certified letter advising her that he strongly disagreed with her decision because she had Stage I cervical cancer that could be cured successfully with radiation therapy. His letter further stated, "If you discontinue this treatment, nothing is going to stop the cancer from growing, and you will die of the disease." Dr. Altdorfer made another attempt to persuade Ms. Broussard to continue radiation therapy on July 26, 1999. When this attempt was unsuccessful, Dr. Altdorfer decided to close her chart.

On or about August 12, 1999, Ms. Broussard met with Dr. John S. Jester at Jester Naturopathic Associates in Lafayette, Louisiana. During this initial visit, Ms. Broussard did not have her medical records with her but informed Dr. Jester that she had cancer of the cervix. Dr. Jester developed a protocol of herbal medications and nutritional recommendations based on the fact that she had cervical cancer. Over the period of time that Ms. Broussard was treated by Dr. Jester, she continued to

experience vaginal bleeding, pelvic pain, and decreased energy levels. Dr. Jester ordered CAT scans and blood tests, allegedly at Ms. Broussard's insistence. He reviewed the results of these tests and informed Ms. Broussard that "no cancer markers were present" and that there was "no sign of a tumor."

On or about January 22, 2001, Ms. Broussard was admitted into Our Lady of Lourdes Regional Medical Center where she was diagnosed with Stage IV cervical cancer and anemia due to prolonged vaginal bleeding. On January 24, 2001, she underwent surgery to remove a tumor from her bladder. She also underwent radiation treatment that was palliative in nature. Ms. Broussard died on March 9, 2001.

In compliance with the Louisiana Medical Malpractice Act, La.R.S. 40:1299.41, *et seq.*, Ms. Broussard's surviving major children, Billy Broussard and Paul Danny Broussard, filed a claim against Dr. Jester with a medical review panel. The Division of Administration notified them that Dr. Jester is not a healthcare provider qualified under the terms of the Louisiana Medical Malpractice Act. The Broussards then filed a petition in district court seeking damages from Dr. Jester based on a claim of medical malpractice. In response, Dr. Jester filed an Answer asserting that the plaintiffs have no cause of action against him based on Ms. Broussard's decision to refuse conventional treatment for her condition in the form of radiation and chemotherapy and her choice to pursue alternative treatment for her condition. He also filed a Motion for Summary Judgment, which was heard on June 23, 2003. The trial court granted the defendant's motion for summary judgment at the conclusion of that hearing.

It is from this judgment the plaintiffs appeal.

## ASSIGNMENTS OF ERROR

1.  The trial court erred in failing to recognize that whether the

2

admittedly disputed facts that Dr. Jester was practicing medicine in the State of Louisiana without a license and should be held to the standard of care of a physician are material facts bearing directly on the issues of liability and damages.

2. The trial court erred in apparently weighing the evidence regarding the validity of the defendant's assertion of victim fault and making a judgment on that issue rather than recognizing the existence of that genuinely disputed issue of material fact which should only be resolved after trial on the merits.

## DISCUSSION

Because they are related, the assignments of error will be discussed together.

Appellate courts review summary judgments *de novo*, using the same criteria applied by the trial courts to determine whether the summary judgment is appropriate. *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La. 2/29/00), 755 So.2d 226. Louisiana Code of Civil Procedure Article 966, in pertinent part, provides as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
>
> . . . .
>
> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is no absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

The appellants are correct in their assertion that the applicable substantive law determines the materiality of facts in a summary judgment setting. *Trahan v. State, Through Dept. of Health and Hosp.*, 95-320 (La.App. 3 Cir. 10/4/95), 663 So.2d 242.

3

Material facts are those which potentially ensure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So.2d 606. If there is a genuinely disputed issue of material fact summary judgment is not appropriate. La.Code Civ.P. art. 966(c)(1).

In determining whether an issue is "genuine" for purposes of a summary judgment motion, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Simon v. Fasig-Tipton Co. of New York*, 524 So.2d 788 (La. App. 3 Cir.), *writs denied*, 525 So.2d 1049 (La.1988).

In the instant case, the plaintiffs base their claim against the defendant on medical malpractice. In their petition they allege that their mother, Shirley Broussard, was a patient of Dr. Jester, who practices naturopathic medicine. They contend that Dr. Jester deviated from applicable medical standards by: 1) failing to provide appropriate medical care under the circumstances; 2) failing to provide correct information regarding diagnostic tests performed on Shirley Broussard; 3) failing to inform Shirley Broussard of the severity of her condition; 4) failing to provide appropriate treatment or services to prevent further growth and/or spread of the cervical cancer; and 5) failing to recommend more aggressive treatment or refer Shirley Broussard to an oncologist.

In response, Dr. Jester filed the motion for summary judgment at issue. In support of his motion, Dr. Jester submitted Ms. Broussard's medical and pharmacy records and the testimony of her former treating oncologist. In addition, he submitted a Statement of Uncontested Material Facts Supporting Summary Judgment and a Memorandum in Support of Motion for Summary Judgment.

Pursuant to La.Code Civ.P. art. 966, the initial burden of proof remains on the mover to show that no genuine issue of material fact exists. Only after the mover has

4

met its initial burden of proof does the burden shift to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La.Code Civ.P. art. 966(c)(2).

After reviewing the record in its entirety, we find the appellee failed to carry his initial burden of showing there is no genuine issue of material fact and that he is entitled to summary judgment by law.

Dr. Jester argues that the facts show Ms. Brousard voluntarily discontinued her radiation chemotherapy treatments prior to the time she began seeing him. He argues it is undisputed that he was a naturopathic physician and not a medical doctor. He further argues it is undisputed that he was not holding himself out as a conventional physician. The trial court concluded, in ruling on this motion, that Dr. Jester did not hold himself out as a conventional doctor to Ms. Broussard.

After reviewing the record we find there are genuine issues of material fact as to both whether Dr. Jester held himself out to the public as a medical doctor and whether he held himself out to Ms. Broussard as a medical doctor.

Louisiana Revised Statute 37:1262 sets forth, in pertinent part, as follows:

> As used in this Part the following words and phrases shall have the meanings ascribed to them:
>
> (1) "The practice of medicine, surgery, or midwifery" means the holding out of one's self to the public as being engaged in the business of, or the actual engagement in, the diagnosing, treating, curing, or relieving of any bodily or mental disease, condition, infirmity, deformity, defect, ailment, or injury in any human being, other than himself, whether by use of any drug, instrument or force, whether physical or psychic, or of what other nature, or any other agency or means; or the examining, either gratuitously or for compensation, of any person or material from any person for such purpose whether such drug, instrument, force, or other agency or means is applied to or used by the patient or by another person; or the attending of a woman

5

in childbirth without the aid of a licensed physician, surgeon, or midwife.

The appellants argue that Dr. Jester was negligent in his treatment of Ms. Broussard in two ways: 1) by practicing medicine without a license in violation of Louisiana law, and  2) by providing care and treatment that fell below the applicable standard of care.

Non-physicians are held to the standard of care of licensed physicians when those non-physicians intrude into the practice of medicine. *Butler v. Louisiana State Bd. of Ed.*, 331 So.2d 192 (La.App. 3 Cir.), *writ refused*, 334 So.2d 230 (La.1976); *Fairchild v. Brian*, 354 So.2d 675(La.App. 1 Cir. 1977), *writ denied*, 356 So.2d 437 (La.1978).

Obviously, whether Dr. Jester was holding himself out to the public as a medical doctor and whether he held himself out to Ms. Broussard as a medical doctor are material issues of fact.  We have reviewed the evidence presented at the hearing and find that, although Dr. Jester denies he held himself out as a medical doctor and denies representing to Ms. Broussard that he is a medical doctor, numerous documents reflect his use of the initials "M.D." behind his name.  The letter dated January 11, 2001, that the appellee sent to the University Medical Center ordering a CT scan bears the initials "M.D." behind his name.  The record reflects documents entitled "Treatment Plan," which contain apparent instructions to the patient, that are signed off by "John S. Jester, M.D., Ph.D., D. Sc."  These documents are dated September 12, 2000, and November 20, 2000.  Dr. Jester's deposition testimony reflects that he told Ms. Broussard that he could help her "with like immune therapy, diet, things like that," and that he told her "the most important thing she needed was surgery, radiation, and maybe chemotherapy."  His deposition also reflects, however, that he told her that

6

he "would need medical records to know what type of cancer we're going to treat . . . ."

Although in his deposition, Dr. Jester states he told her he could not order scans to know whether or not the disease was progressing, he did in fact order a CT scan, representing himself as John S. Jester, M.D., and he also ordered blood work. He sent those test results to her and apparently interpreted those tests. The tests results sent to Ms. Broussard in May, 2000, apparently contain a notation by Dr. Jester that he found "no cancer markers" and further notes it is a 'Good Report." Further in appellee's deposition he made the following statement: "[I] do recall a conversation that she said, "When can I stop taking all this stuff. It's too expensive." And I said, "When something shows me that we should stop, like you go into remission."

## DECREE

Whether the appellee held himself out as a medical doctor is a contested issue of material fact which precludes summary judgment. The trial court erred in granting the appellee's motion. The judgment of the trial court is reversed and this matter is remanded to the trial court for further proceedings. The costs of this appeal are assessed to the defendant-appellee.

**REVERSED AND REMANDED**.