STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-709

REBECCA BROWN

VERSUS

STATE OF LOUISIANA, ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 215,426-F
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

Joseph T. Dalrymple
Rivers, Beck, Dalrymple & Ledet
P.O. Box 12850
Alexandria, LA 71315-2850
Counsel for Plaintiff-Appellee:
    Rebecca Brown

Lewis O. Lauve, Jr.
Special Assistant Attorney General
P.O. Box 307
Alexandria, LA 71309-0307
Counsel for Defendant-Appellant:
    State of Louisiana

**PAINTER, Judge.**

In this claim based on medical malpractice, Defendant, State of Louisiana through the LSU Medical Center Health Care Services Division, d/b/a Huey P. Long Medical Center – Pineville, appeals the district court's grant of summary judgment in favor of Plaintiff, Rebecca Brown. Finding that there are genuine issues of material fact, we reverse the judgment of the court below and remand the matter for trial on the merits.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2002, Brown was thirty-two years old and had been experiencing several months of irregular menstrual cycles with profuse bleeding and significant pain. Apparently, she tried using Aleve, an anti-inflammatory, to treat her symptoms for several months to no avail. Plaintiff was seen by Dr. David Barnard at Huey P. Long Medical Center on January 31, 2002. A hysterectomy was recommended and ultimately performed on February 6, 2002 at Huey P. Long Medical Center by Dr. Margaret Carter with Dr. Carol Darwish and Dr. Yang assisting.

Following the surgery, Plaintiff requested a medical review panel, alleging that she suffered serious complications including lacerations to her bladder, that the surgery was unnecessary, and that she was never offered more conservative medical approaches to her problem in violation of the informed consent statute. After the medical review panel found in favor of Defendant, Plaintiff filed the present suit.

Plaintiff moved for summary judgment on the issue of liability and alleged that since there was no meaningful discussion of alternative therapy or treatment, there was a failure to obtain informed consent. Defendant opposed the motion and served supporting affidavits on Plaintiff on February 28, 2006. Plaintiff objected to the

1

introduction of the affidavits on the ground that they were not timely as the hearing was set for March 6, 2006. The trial court accepted the affidavits. The trial court went on to grant a summary judgment in favor of Plaintiff on the issue of liability, finding that Defendant failed to obtain a satisfactory informed consent from Plaintiff to perform a vaginal hysterectomy. No written reasons for judgment appear in the record.

Defendant appeals. Plaintiff has answered the appeal, asserting that the trial court erred as a matter of law in allowing the admission of the late-filed affidavits on behalf of Defendant. Defendant also filed a motion to the supplement the record on appeal with the deposition transcript of Dr. Carol Darwish. For the following reasons, we deny the motion to supplement, affirm the acceptance of Defendant's affidavits, and reverse the grant of summary judgment.

## DISCUSSION

*Motion to Supplement Record*

Defendant filed a motion to supplement the record on appeal, seeking to allow the introduction of the transcript of the deposition of Dr. Carol Darwish. Dr. Darwish's deposition was not taken until July 19, 2006, after the lodging of the record of this case in this court. Plaintiff opposed the introduction of this deposition transcript. This matter was referred for consideration with the merits of the appeal.

Louisiana Code of Civil Procedure Article 2132 provides:

> A record on appeal which is incorrect or contains misstatements, irregularities or informalities, or which omits a material part of the trial record, may be corrected even after the record is transmitted to the appellate court, by the parties by stipulation, by the trial court or by the order of the appellate court. All other questions as to the content and form of the record shall be presented to the appellate court.

2

Obviously, Defendant's motion does not concern the correction of an erroneous record or allege that the record is deficient as to evidence actually introduced at the trial court. It seeks, instead, to introduce a transcript of a deposition taken after the hearing on the motion for summary judgment and after the record was lodged with this court on May 31, 2006. The deposition of Dr. Darwish is clearly new evidence. This court is not vested with the authority to receive new evidence and cannot consider evidence which was not part of the record before the trial court. *White v. W. Carroll Hosp., Inc.*, 613 So.2d 150 (La.1992). Therefore, the motion to supplement the record on appeal is hereby denied.

*Motion to Dismiss*

In opposition to the Defendant's motion to supplement, Plaintiff filed a pleading entitled, "Motion to Dismiss and Memorandum in Opposition to Motion to Supplement Appeal Record." However, the pleading contains argument only as to Defendant's motion to supplement the record on appeal. We are left to assume that the motion to dismiss referred to Defendant's motion to supplement. As we have denied Defendant's motion to supplement, we find that consideration of the motion to dismiss is unnecessary.

*Motion for Summary Judgment*

"It is well settled that appellate courts review summary judgments *de novo*, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate." *Butler v. DePuy*, 04-101, p. 3 (La.App. 3 Cir. 6/9/04), 876 So.2d 259, 261 (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730).

3

Louisiana Code of Civil Procedure Article 966(B) provides:

> The motion for summary judgment and supporting affidavits shall be served at least fifteen days before the time specified for the hearing. For good cause, the court shall give the adverse party additional time to file a response, including opposing affidavits or depositions. The adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to Article 1313 at least eight days prior to the date of the hearing unless the Rules for Louisiana District Courts provide to the contrary. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.

With respect to what determines whether or not a fact is material, this court, in *Broussard v. Jester*, 04-18, p. 4 (La.App. 3 Cir. 6/16/04), 876 So.2d 940, 942, *writ denied*, 04-1787 (La. 10/15/04), 883 So.2d 1056, has stated:

> Material facts are those which potentially ensure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So.2d 606. If there is a genuinely disputed issue of material fact summary judgment is not appropriate. La.Code Civ.P. art. 966(c)(1).
>
> In determining whether an issue is "genuine" for purposes of a summary judgment motion, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Simon v. Fasig-Tipton Co. of New York*, 524 So.2d 788 (La.App. 3 Cir.), *writs denied*, 525 So.2d 1049 (La.1988).

In light of the requirements of La.Code Civ.P. art. 966(B), we first consider Plaintiff's argument that the trial court erred in admitting the Defendant's affidavits in opposition to the motion for summary judgment into evidence on the basis that these affidavits were not served upon Plaintiff in a timely fashion. Louisiana Code of Civil Procedure Article 966(B) provides that the adverse party's affidavits shall be served eight days prior to the hearing unless the Rules for Louisiana District Courts provide otherwise. Uniform District Court Rule 9.9(b) provides that:

4

> A party who opposes an exception or motion must concurrently furnish the trial judge and serve on all other parties an opposition memorandum at least eight calendar days before the scheduled hearing. The opposition memorandum must be served on all other parties so that it is received by the other parties at least eight calendar days before the hearing, unless the court sets a shorter time.

In this case, the hearing was set for Monday, March 6, 2006. Defendant's memorandum in opposition to Plaintiff's motion for summary judgment was filed with the court on February 24, 2006. The affidavits of Dr. David Barnard, Dr. Carl Darwish, and Dr. Lisa Colon were attached to said opposition. The certificate of service asserts that the documents were mailed to Plaintiff on that same date. Plaintiff's counsel avers that he did not receive the documents until February 28, 2006. In order to be in compliance with the pertinent rules, the Defendant's opposing affidavits should have been served on February 22, 2006. However, in *Peoples State Bank v. Hwy. One Crawfish, Inc.*, 99-1393, pp. 7-8 (La.App. 3 Cir. 5/24/00), 771 So.2d 101, 107, *writ denied*, 00-2842 (La. 12/8/00), 776 So.2d 469, this court has recognized that:

> The mere fact that the defendants' counter-affidavits were filed untimely does not deem them inadmissible. In fact, it is entirely within the trial court's discretion to decide whether to admit such affidavits filed untimely in violation of La.Code Civ.P. art. 966(B). Only if there is evidence that the opposing party will be prejudiced by the late introduction of the affidavits is it reversible error for a trial court to allow the affidavits to be filed. *White v. Gulf States Utilities*, 465 So.2d 287 (La.App. 3 Cir.), *writ denied*, 468 So.2d 576 (La.1985).

Plaintiff contends that she was prejudiced by the late filing of the aforementioned affidavits because "there is absolutely no reference to the individuals executing the late affidavits and claiming to have obtained informed consent from plaintiff regarding alternative therapies anywhere. . ." However, we note that Dr. Barnard was deposed by Plaintiff on November 21, 2005 and that this deposition was

attached to Plaintiff's motion for summary judgment. We further note that his affidavit is consistent with his deposition testimony as discussed more fully below. Attached to Dr. Barnard's deposition is an operative report which clearly lists Dr. Darwish as one of the surgeons assisting in the procedure. Dr. Lisa Colon is the physician who signed the consent forms on behalf of Defendant. As all of these affiants were known to Plaintiff, we find no unfair prejudice to Plaintiff by the acceptance of the late-filed affidavits. Accordingly, we find no abuse of discretion by the trial court in allowing the late affidavits to be filed and affirm the trial court's ruling in that respect.

However, once the trial court accepted the late-filed affidavits, it was bound to consider them, as are we, in conducting our *de novo* review of the record. *See Thibodeaux v. Ferrellgas, Inc.*, 98-862 (La.App. 3 Cir. 1/6/99), 741 So.2d 34, *writ denied*, 99-366 (La. 3/26/99), 739 So.2d 797. As the trial court gave no written reasons for judgment, we can only surmise that it chose to afford the affidavits no weight and chose to believe Plaintiff's version of events. As we noted in *Thibodeaux*, "[o]ur law does not permit a trial court to make such credibility determinations in ascertaining the existence of a material fact when deciding motions for summary judgment." *Id* at 42.

Louisiana Revised Statutes 40:1299.40 governs the requirements for informed consent to medical treatment. That statute provides, in pertinent part, as follows:

> A. (1) Notwithstanding any other law to the contrary, written consent to medical treatment means a handwritten consent to any medical or surgical procedure or course of procedures which: sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures; acknowledges that such disclosure of information has been made and

6

that all questions asked about the procedure or procedures have been answered in a satisfactory manner; and is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.

. . . .

C. Where consent to medical treatment from a patient, or from a person authorized by law to consent to medical treatment for such patient, is secured other than in accordance with Subsection A above, the explanation to the patient or to the person consenting for such patient shall include the matters set forth in Paragraph (1) of Subsection A above, and an opportunity shall be afforded for asking questions concerning the procedures to be performed which shall be answered in a satisfactory manner. Such consent shall be valid and effective and is subject to proof according to the rules of evidence in ordinary cases.

Furthermore, paragraph (E)(7)(c) provides, in pertinent part that:

In order to be covered by the provisions of this Subsection, the physician or other health care provider who will actually perform the contemplated medical or surgical procedure shall:

. . .

(iii) Disclose reasonable therapeutic alternatives and risks associated with such alternatives;

(v) Provide an opportunity to ask any questions about the contemplated medical or surgical procedure, risks, or alternatives and acknowledge in writing that he answered such questions, to the patient or other person authorized to give consent to medical treatment, receipt of which shall be acknowledged in writing.

It is undisputed that Plaintiff signed a written consent form and three attachments thereto. The consent form contains a statement to the effect that Plaintiff was informed of alternatives to the recommended treatment and, by signing, acknowledges receipt of said information. Plaintiff contends that she was never offered a trial of more conservative approaches, such as hormone therapy, to treating

7

her problems and so stated in her affidavit attached to her motion for summary judgment. Dr. Barnard's deposition was also attached in support of the motion for summary judgment. Specifically, Plaintiff pointed to the following testimony in support of her assertion that no other treatment was offered to her:

Q: All right. What about hormonal dysfunction and a trial of hormones, isn't that recommended by ACOG and, in fact, most other modern studies and texts?

A: It can be recommended . . . it would be recommended in some cases as an initial therapy, certainly.

Q: And why was it not recommended here, and why would it have been in any way inappropriate here?

A: It would not have been inappropriate there.

Q: Well, shouldn't it at least have been offered to her as an alternative reasonable treatment?

A: I think it should have been considered by her, that's correct.

Q: Okay. But you didn't give her the opportunity to consider it?

A: I mentioned it. I can't go beyond that.

Dr. Bernard went on to say that he could not recall "with what force" he advised her try the hormone therapy.

Defendant, on the other hand, contends that the informed consent forms signed by Plaintiff were valid. The affidavit of Dr. Barnard states that he personally examined Plaintiff and specifically recalled addressing the issue of hormone therapy with her. This is substantially consistent with his deposition testimony. The affidavit of Dr. Darwish states that she performed the pre-operative history and physical on Plaintiff on February 2, 2002 and that, at that time, she detailed the risks, complications, alternatives to surgery, and alternative therapies (specifically including hormone therapy) and gave Plaintiff an opportunity to ask any questions

8

about said matters. Dr. Darwish further stated that after that examination, Plaintiff indicated that she wanted to go forward with the hysterectomy. Dr. Colon's affidavit states that she was part of the treatment team assigned to Plaintiff and that she signed the consent forms on behalf of Defendant in that capacity. Dr. Colon's affidavit further states that she met with Plaintiff on February 1, 2002 and discussed the risks of the surgery, alternatives to the surgery, and complications of the surgery with her. The affidavit of Dr. Colon further states that Plaintiff verbally indicated that she understood the risks involved and agreed to proceed with the surgery and abandon any further medical management.

Thus, the crux of the case is whether Plaintiff was offered reasonable therapeutic alternatives to the hysterectomy. Plaintiff says none were offered. Defendant says alternatives were presented. This is a credibility determination which is to be left to the jury. As we have found that the affidavit of Dr. Barnard is consistent with his deposition testimony that hormone therapy was presented as an alternative treatment to the hysterectomy, we can find no reasonable basis for the trial court apparently having disregarded it after accepting it into the record for summary judgment purposes. Likewise, we see no reasonable basis for the trial court to have disregarded the affidavits of Drs. Darwish and Colon. These affidavits reveal a material issue of fact in dispute and should have defeated summary judgment.

## DECREE

For the reasons assigned above, Defendant's motion to supplement is hereby denied, and Plaintiff's motion to dismiss is rendered moot by that denial. Furthermore, we affirm the trial court's acceptance of the late-filed affidavits into evidence. The trial court's grant of summary judgment in favor of Plaintiff is

9

reversed in that there exist genuine issues of material fact regarding whether or not there was a valid informed consent by the Plaintiff prior to surgery. Accordingly, the matter is remanded for trial on the merits. All costs of this appeal are assessed to Plaintiff-Appellee, Rebecca Brown.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**