# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 08-273

**REBECCA BROWN**

**VERSUS**

**STATE OF LOUISIANA, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 215,426-F
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## J. DAVID PAINTER
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, J. David Painter, and Chris J. Roy pro tem, Judges.

**AFFIRMED.**

**Joseph T. Dalrymple**
**Rivers, Beck, Dalrymple & Ledet**
**P.O. Box 12850**
**Alexandria, LA 71315-2850**
**Counsel for Plaintiff-Appellee:**
　　**Rebecca Brown**

**Lewis O. Lauve, Jr.**
**Special Assistant Attorney General**
**P.O. Box 307**
**Alexandria, LA 71309-0307**
**Counsel for Defendant-Appellant:**
　　**State of Louisiana**

**PAINTER, Judge.**

In this claim based on medical malpractice, Defendant, State of Louisiana through the LSU Medical Center Health Care Services Division, d/b/a Huey P. Long Medical Center – Pineville, appeals the jury's verdict in favor of Plaintiff, Rebecca Brown.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In a prior opinion from this court, we reversed the trial court's grant of partial summary judgment in favor of Plaintiff on the issue of liability and held that whether Plaintiff was offered reasonable therapeutic alternatives to hysterectomy was a credibility determination which was to be left to the jury.  *Brown v. State*, 06-709 (La.App. 3 Cir. 11/2/06), 942 So.2d 721.  The facts were set forth as follows:

> In 2002, Brown was thirty-two years old and had been experiencing several months of irregular menstrual cycles with profuse bleeding and significant pain.  Apparently, she tried using Aleve, an anti-inflammatory, to treat her symptoms for several months to no avail. Plaintiff was seen by Dr. David Barnard at Huey P. Long Medical Center on January 31, 2002.  A hysterectomy was recommended and ultimately performed on February 6, 2002 at Huey P. Long Medical Center by Dr. Margaret Carter with Dr. Carol Darwish and Dr. Yang assisting.

> Following the surgery, Plaintiff requested a medical review panel, alleging that she suffered serious complications including lacerations to her bladder, that the surgery was unnecessary, and that she was never offered more conservative medical approaches to her problem in violation of the informed consent statute.  After the medical review panel found in favor of Defendant, Plaintiff filed the present suit.

Following a trial by jury, the trial court rendered judgment on the jury's verdict finding that Defendant breached the applicable standard of care.  The judgment further reduced the amount of damages awarded by the jury pursuant to the statutory cap on damages found in La.R.S. 40:1299.39.  Defendant now appeals, asserting

1

manifest error in the jury's findings as to liability, error on the part of the trial court in overruling an objection related to an alleged misstatement of law in the presence of the jury, and abuse of discretion in the jury's award of damages.

## DISCUSSION

In our prior opinion in this case, we noted that:

It is undisputed that Plaintiff signed a written consent form and three attachments thereto. The consent form contains a statement to the effect that Plaintiff was informed of alternatives to the recommended treatment and, by signing, acknowledges receipt of said information. Plaintiff contends that she was never offered a trial of more conservative approaches, such as hormone therapy, to treating her problems and so stated in her affidavit attached to her motion for summary judgment. Dr. Barnard's deposition was also attached in support of the motion for summary judgment. Specifically, Plaintiff pointed to the following testimony in support of her assertion that no other treatment was offered to her:

> Q:     All right.  What about hormonal dysfunction and a trial of hormones, isn't that recommended by ACOG and, in fact, most other modern studies and texts?
>
> A:     It can be recommended . . . it would be recommended in some cases as an initial therapy, certainly.
>
> Q:     And why was it not recommended here, and why would it have been in any way inappropriate here?
>
> A:     It would not have been inappropriate there.
>
> Q:     Well, shouldn't it at least have been offered to her as an alternative reasonable treatment?
>
> A:     I think it should have been considered by her, that's correct.
>
> Q:     Okay.  But you didn't give her the opportunity to consider it?
>
> A:     I mentioned it.  I can't go beyond that.

Dr. Bernard went on to say that he could not recall "with what force" he advised her try the hormone therapy.

2

Defendant, on the other hand, contends that the informed consent forms signed by Plaintiff were valid. The affidavit of Dr. Barnard states that he personally examined Plaintiff and specifically recalled addressing the issue of hormone therapy with her. This is substantially consistent with his deposition testimony. The affidavit of Dr. Darwish states that she performed the pre-operative history and physical on Plaintiff on February 2, 2002 and that, at that time, she detailed the risks, complications, alternatives to surgery, and alternative therapies (specifically including hormone therapy) and gave Plaintiff an opportunity to ask any questions about said matters. Dr. Darwish further stated that after that examination, Plaintiff indicated that she wanted to go forward with the hysterectomy. Dr. Colon's affidavit states that she was part of the treatment team assigned to Plaintiff and that she signed the consent forms on behalf of Defendant in that capacity. Dr. Colon's affidavit further states that she met with Plaintiff on February 1, 2002 and discussed the risks of the surgery, alternatives to the surgery, and complications of the surgery with her. The affidavit of Dr. Colon further states that Plaintiff verbally indicated that she understood the risks involved and agreed to proceed with the surgery and abandon any further medical management.

Thus, the crux of the case is whether Plaintiff was offered reasonable therapeutic alternatives to the hysterectomy. Plaintiff says none were offered. Defendant says alternatives were presented. This is a credibility determination which is to be left to the jury.

*Brown*, 942 So.2d at 726-27.

After hearing the evidence, the jury in this case found in favor of Plaintiff. Defendant asserts three assignments of error with regard to the jury's findings. First, Defendant argues that the jury committed manifest error when it found that Plaintiff had proven the requisite standard of care with regard to the recommendation and performance of the hysterectomy. Second, Defendant argues that the jury committed manifest error when it found that Plaintiff had proven a breach of the standard of care when "such decision was based on testimony so inconsistent with the appellee's medical records and other documentary evidence that no reasonable fact finder could give credit to such testimony." Finally, Defendant argues that the jury committed

3

manifest error when it failed to recognize the presumption of validity of the signed consent form.

Louisiana Revised Statutes 9:2794(A) sets forth a plaintiff's burden of proof:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

It is well settled that whether conduct fell below the applicable standard of care is a factual determination subject to the manifest error standard of review. *Curtis v. Columbia Doctors' Hosp. of Opelousas*, 03-916 (La.App. 3 Cir. 12/17/03), 862 So.2d 1125. "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

Louisiana Revised Statutes 40:1299.40 governs the requirements for informed consent to medical treatment. That statute provides, in pertinent part, as follows:

A. (1) Notwithstanding any other law to the contrary, written consent to medical treatment means a handwritten consent to any medical or surgical procedure or course of procedures which: sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures; acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been

4

answered in a satisfactory manner; and is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.

. . . .

C. Where consent to medical treatment from a patient, or from a person authorized by law to consent to medical treatment for such patient, is secured other than in accordance with Subsection A above, the explanation to the patient or to the person consenting for such patient shall include the matters set forth in Paragraph (1) of Subsection A above, and an opportunity shall be afforded for asking questions concerning the procedures to be performed which shall be answered in a satisfactory manner. Such consent shall be valid and effective and is subject to proof according to the rules of evidence in ordinary cases.

Furthermore, paragraph (E)(7)(c) provides, in pertinent part that:

In order to be covered by the provisions of this Subsection, the physician or other health care provider who will actually perform the contemplated medical or surgical procedure shall:

. . . .

(iii) Disclose reasonable therapeutic alternatives and risks associated with such alternatives;

(v) Provide an opportunity to ask any questions about the contemplated medical or surgical procedure, risks, or alternatives and acknowledge in writing that he answered such questions, to the patient or other person authorized to give consent to medical treatment, receipt of which shall be acknowledged in writing.

The jury heard testimony from several experts in the field of obstetrics and gynecology, including Drs. David Barnard, Eden Moran, Lisa Colon, Martin Tanner, Bruce Halbridge, Haissam Bouz, Carol Darwish, and Joel C. Hall. Dr. Bouz, who had treated Plaintiff in the past, testified that it would be a breach of the standard of care to perform a hysterectomy without first trying "medical management" using

5

diagnostic procedures and hormonal therapy. Dr. Moran, a member of the medical review panel, clearly testified that it was a breach of the standard of care to proceed to hysterectomy without doing medical investigation and without offering hormone therapy. Dr. Halbridge, Plaintiff's medical expert, also testified that there was a breach in the standard of care. Drs. Barnard and Darwish, who treated Plaintiff at the Defendant hospital and performed the surgery at issue, testified that they offered alternative therapies to Plaintiff. Dr. Hall, Defendant's expert, testified that not all tests are appropriate for all patients and that Defendant did not breach the standard of care in light of the patient's wishes to have a hysterectomy.

In this case, the jury was presented with the testimony of several medical experts as well as that of Plaintiff. In some instances, these opinions were conflicting. However, based on the record, we find that the jury's credibility determinations were reasonable and that the jury reasonably weighed the evidence presented. *See Stobart v. State, through the Dept. of Transp. & Dev.*, 617 So.2d 880 (La.1993). Accordingly, we cannot say that the jury's findings of a breach of the standard of care and failure to find the signed consent valid were manifestly erroneous or clearly wrong.

Defendant also asserts that the trial judge prejudiced the jury when he overruled Defendant's objection to Plaintiff's counsel's statement that "Louisiana law required the physician performing the surgery must also sign the consent form." Dr. Moran's deposition was read to the jury. One of Plaintiff's counsel's questions stated as follows:

Q: . . . let me ask you first. What is your understanding of the rules of informed consent, and let me suggest this to you. The statute, 1299.40, indicates that the informed consent must be obtained by

6

the surgeon who is actually to perform the procedure, are you aware of that?

Defendant's objection to this question was overruled. Defendant argues that this incorrect statement of law is highly prejudicial since the primary issue in this case is whether or not a valid informed consent was obtained. We agree with Plaintiff that any perceived prejudice was cured by the trial court's closing instructions to the jury which repeatedly included instructions that the arguments of counsel are not evidence and that the jury must follow the law as instructed by the trial judge. This assignment of error is without merit.

Defendant finally argues that the amount of damages awarded by the jury was excessive. Specifically, Defendant argues that "the jury abused its discretion in its award of both special and general damages, which had a direct effect on the cap adjusted judgment signed by the trial court." The jury awarded $725,000.00 in general damages, $1,500,000.00 in economic damages, $25,000.00, in past medicals, and future medical expenses. The judgment signed by the trial court reduced the damages to $525,000.00 pursuant to the statutory cap on damages and fixed Dr. Bouz's expert witness fee at $1,500.00, which Defendant also argues is excessive. Defendant's motion for remittitur was denied by the trial court.

In *Miller v. LAMMICO*, 07-1352, p. 28 (La. 1/16/08), 973 So.2d 693, 711, the supreme court noted:

> An appellate court reviews a trial court's general damage award using the abuse of discretion standard. *Coco v. Winston Industries, Inc.*, 341 So.2d 332, 335 (La.1976). The trier of fact is afforded much discretion in independently assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. *Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829, 834 (La.1991). An appellate court may disturb a damages award only after an articulated analysis of the facts discloses an abuse of discretion. *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337, 1340

7

(La.1993); *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993) (the fact finder's discretion in awarding general damages is vast and should rarely be disturbed); *Reck v. Stevens.* 373 So.2d 498, 501 (La.1979). To determine whether there has been an abuse of discretion by the fact finder, the reviewing court looks first to the facts and circumstances of the particular case. *Theriot*, 625 So.2d at 1340; *Reck*, 373 So.2d at 501. Only if a review of the facts reveals an abuse of discretion, is it appropriate for the appellate court to resort to a review of prior similar awards. *Reck*, 373 So.2d at 501; *Anderson*, 583 So.2d at 834; *Youn*, 623 So.2d at 1261.

Plaintiff was thirty-two years old at the time of the hysterectomy. She testified at trial that she is still required to wear diapers because of lack of bladder control, that her medications cost about $800.00 per month, that she is irritable, and still in pain. She previously worked as a truck driver and testified to her past annual wages. Our review of the facts reveals no abuse of discretion in the jury's award of damages.

With respect to Defendant's complaint that Dr. Bouz' fee was excessive, we note that a trial court has great discretion in setting expert witness fees. Among the factors to be considered by the trial court in setting expert witness fees are the time spent testifying at trial, time spent in preparation for trial, time spent away from regular duties while waiting to testify, the extent and nature of the work performed, and the knowledge, attainments, skill of the experts, helpfulness of the expert's report and testimony to the trial court, the amount in controversy, the complexity of the problem addressed by the expert, and awards to experts in similar cases. *Albin v. Illinois Cent. Gulf R. Co.*, 607 So.2d 844, 845 (La.App. 1 Cir. 1992). We find no abuse of discretion in the trial court's setting of the fee at $1,500.00.

## DECREE

For the reasons assigned above, we affirm the jury's verdict in favor of Plaintiff, Rebecca Brown. All costs of this appeal are assessed to Defendant-

8

Appellant, State of Louisiana through the LSU Medical Center Health Care Services Division, /d/b/a Huey P. Long Medical Center – Pineville.

**AFFIRMED.**